UNITED STATE DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

**MONIQUE LAWRENCE,**
        **Plaintiff,**

  vs.
                  **COMPLAINT**

**BRIAN FISCHER, DEBORAH JOY, J. BONACCI,
DONALD SELSKY, WILLIAM POWERS,
LESLIE McNAMARA, S. SCALISE,**
        **Defendants.**
_____

## PRELIMINARY STATEMENT

  1.  This is a civil rights action brought by the plaintiff Monique Lawrence, seeking damages as a result of the termination of her participation in the work release program operated by the New York State Department of Correctional Services (DOCS), which resulted in her return to state prison, her placement in the Special Housing Unit, and her denial of early parole release and 17 months of illegal confinement.

## JURISDICTION AND VENUE

  2.  The court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

  3.  This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, to remedy deprivations under color of state law under the Fifth and Fourteenth Amendments of the U.S. Constitution.

  4.  Venue properly lies in the Western District of New York pursuant to 28 U.S.C. § 1391(b) (2).

## PREVIOUS LAWSUITS

5.      Plaintiff has filed one other lawsuit concerning the same facts and circumstances giving rise to the instant action, Matter of Lawrence v. Selsky, et al., 42 A.D.3d 939, 837 N.Y.S.2d 882 (4th Dept. 2007).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.      Plaintiff has exhausted her administrative remedies with respect to her claims.

## PARTIES

7.      Plaintiff Monique Lawrence is currently on parole and living in Buffalo, NY. At times relevant to this complaint, she was held at the Albion Correctional Facility.

8.      Defendant Brian Fischer, at times relevant to this complaint, was the Commissioner of the Department of Correctional Services. Commissioner Fischer has responsibility for the operation of DOCS' disciplinary system, temporary release program and the granting of parole under the presumptive supplemental merit time program.

9.      Defendant Deborah Joy, at times relevant to this complaint, was the Director of the Temporary Release Program in the central office of the DOCS in Albany, NY. Ms. Joy is responsible for the operation and administration of the Temporary Release Program.

10.     Defendant J. Bonacci is a Temporary Release Reviewer in the Temporary Release Program office of the DOCS in Albany, NY. J. Bonacci issued the decision denying Plaintiffs's administrative appeal of the decision to revoke her temporary release program participation.

11.     Defendant Donald Selsky, at times relevant to this complaint, was the Director of Special Housing/Inmate Disciplinary Programs in the central office of the DOCS in Albany, NY. Mr. Selsky is responsible for the operation of the inmate discipline program and issued the decisions denying Plaintiff's appeals of her Tier III hearings.

12. Defendant William Powers, at times relevant to this complaint, was the Superintendent of the Albion Correctional Facility (Albion) and was responsible for the conduct of and approved the dispositions of Plaintiff's Tier III hearings and Temporary Release Revocation hearing conducted at Albion.

13. Defendant Leslie McNamara, at times relevant to this complaint, was the Deputy Superintendent of Programs at Albion and was the Hearing Officer who conducted of one of Plaintiff's Tier III hearings at Albion and, acting on behalf of the Superintendent, approved Plaintiff's removal from the temporary release program.

14. Defendant D. Scalise, at times relevant to this complaint, was a Captain at Albion and was the Hearing Officer responsible for the conduct of one of Plaintiff's Tier III hearings.

**FACTS**

15. In January 2006, Plaintiff, upon successful competition of the CASAT substance abuse program operated by DOCS, was approved for and began participating in the temporary release program.

16. Each week while Plaintiff participated in the work release program, she lived and worked in Depew, NY from Sunday morning until Friday evening and was able to see her children, family and friends, work at a full time job and earn wages. She returned to Albion on Friday evening and spent all day Saturday there.

17. On March 14, 2006, Plaintiff met with her Work Release supervisor, C. Anderson in Buffalo, N.Y. During the visit, she was asked to empty the contents of her purse on his desk.

18. Plaintiff's purse contained, among other things, a plastic card with the word DEBIT on its face, issued by Visa in conjunction with Baby Phat, a clothing manufacturer. .

19. The debit card had not been activated, was not associated with any financial account and did not have any value.

20. Mr. Anderson asked Plaintiff about the card and reminded her that the temporary release rules prohibited her from getting involved with a credit card.

21. Plaintiff explained to Mr. Anderson that the card was not a credit card but a debit card which was not activated and that she had no intention of activating it.

22. On March 14, 2006, Mr. Anderson wrote a Misbehavior Report charging Plaintiff with violating temporary release rules for possessing a Visa card.

23. Plaintiff was not detained on March 14, 2006 and was not notified about this Misbehavior Report until a week later on March 21, 2006.

24. Two days later on March 16, 2006, Plaintiff reported to see Mr. Anderson, who inspected the contents of her wallet. Her wallet contained a receipt from Verizon Wireless for prepaid minutes she had purchased to be used on a cell phone.

25. Mr. Anderson asked Plaintiff about the receipt and reminded her that the temporary release rules prohibited her from getting involved with installment contracts.

26. Plaintiff explained to Mr. Anderson that the receipt was for prepaid minutes on her cell phone and that it was not an installment contract for cell phone service. She stated that she inquired of the Verizon sales person before she purchased the minutes to make sure it was not a contract and pointed out to Mr. Anderson that the Verizon receipt stated it wasn't an installment contract for services.

27. Mr. Anderson directed Plaintiff to return to Albion that day to meet with her DOCS' institutional work release counselor.

28. That same day, March 16, 2006, Plaintiff returned to Albion and met with her DOCS' institutional work release counselor.

4

29. Upon arrival at Albion, Plaintiff was taken to the Special Housing Unit (SHU), strip searched, given prison clothes and confined in isolation in SHU.

### The Tier Hearings

30. On March 17, 2006, Plaintiff was served with a misbehavior report, dated March 16, 2006, charging her with violations of the temporary release rules for signing a contract for Verizon Wireless cell phone service and a layaway plan for jewelry.

31. On March 21, 2006, Plaintiff was taken in shackles to a Tier III hearing at Albion, presided over by Defendant Scalise, regarding the misbehavior report dated March 16, 2006.

32. Plaintiff pled not guilty to the charges against her.

33. Plaintiff testified that the Verizon Wireless account which she had was a prepaid account and not a contract obligating her to future payments and thus did not violate the temporary release rules. She stated that she was careful when she purchased the prepaid minutes and was assured by the Verizon sales representative that the agreement was not an installment contract.

34. Plaintiff provided documentary evidence to support her testimony and stated that her boyfriend was present when she purchased the prepaid minutes at Verizon Wireless and that her boyfriend put the jewelry on the layaway plan.

35. Plaintiff asked that her boyfriend be called as a witness. Defendant Scalise denied the request.

36. Defendant Scalise found the Plaintiff guilty of entering into a contract with Verizon Wireless and ordered that Plaintiff be held for two (2) months in the Special Housing Unit, to be served from March 16, 2006 until May 16, 2006, and that she lose two (2) months loss of good time.

37. On March 21, 2006, Plaintiff was served with the other misbehavior report written by Mr. Anderson, dated March 14, 2006, charging her with violations of the temporary release rules for possession of the Visa debit card.

38. On March 27, 2006, Plaintiff was again taken in shackles to a Tier III hearing at Albion, presided over by Defendant McNamara, regarding the misbehavior report dated March 16, 2006.

39. Plaintiff pled not guilty to the charges against her.

40. She testified that the Visa card she had in her purse was not a credit card but a debit card which had never been activated. She testified that she had no intention of activating the debit card or using it and only had the card, which was issued by her favorite designer, Baby Phat, because she liked the color and design.

41. Defendant McNamara found the Plaintiff guilty of "spending money without the Parole Officer's knowledge" and ordered that Plaintiff be held for twelve (12) days in the Special Housing Unit, running from March 16, 2006 until March 27, 2006, concurrent with the two month sentence she received on March 21, 2006.

42. Contrary to defendant McNamara's order, Plaintiff was required to serve the twelve (12) days in SHU consecutive to the March 21, 2006 disposition and was held in the SHU from May 16, 2006 until May 28, 2006. Defendant McNamara knew that Plaintiff was made to serve the 12 days consecutively rather than concurrently and did nothing to correct the sentence.

43. Upon information and belief, Defendant William Powers, Albion Superintendent, was responsible for and approved Plaintiff's confinement in SHU from March 16, 2006 to May 28, 2006.

## SHU Conditions

44. Plaintiff was held in the Special Housing Unit at Albion for 73 days from March 16, 2006 to May 28, 2006. She was held in isolation in a 6 foot by 9 foot cell for 23 hours a day.

45. Plaintiff was held for one hour a day in an outdoor wire mesh pen for exercise.

46. Every time Plaintiff left her cell she was handcuffed behind her back or shackled, with leg irons and handcuffs attached to a waste chain.

47. Plaintiff was allowed only three, 10 minute showers per week and was not allowed to have her personal bathroom and hygiene supplies.

48. While held in SHU, Plaintiff was denied regular recreational opportunities, denied package, commissary and telephone privileges, had restricted access to reading material and was not allowed to watch television.

49. On March 16, 2006, Plaintiff was taken from her life in the community where she enjoyed freedom of movement, the comfort of family and friends and personal choice and held in isolated 23 hour a day confinement.

50. As a result of Plaintiff's termination from temporary release and her confinement in the Special Housing Unit, as well as, her illegal confinement in prison for 17 months from March 2006 until August 2007, she suffered physical injury and emotional distress.

**Temporary Release Hearing**

51. Almost four weeks after Plaintiff was placed in SHU, on April 10, 2006, Albion Temporary Release Committee members T. Tracz and A. Soto came to Plaintiff's cell door in SHU and informed her that she was being removed from the temporary release program.

52. Plaintiff was not given prior written notice of any temporary release revocation charges or hearing, she was not allowed to testify in her defense nor call witnesses and present documentary evidence. Plaintiff was not present at any temporary release revocation hearing if one was held.

53. On April 12, 2006, Defendant McNamara, acting in the capacity of the Albion Superintendent, approved the Temporary Release Committee's decision.

### Tier III Administrative Appeals

54. Plaintiff filed timely appeals of her Tier III hearing dispositions to the DOCS' Commissioner.

55. By a decision dated May 25, 2006, Defendant Donald Selsky, acting on behalf of the DOCS' Commissioner, reviewed and affirmed Plaintiff's March 27, 2006 Tier III hearing.

56. By a decision dated June 6, 2006, Defendant Selsky, acting on behalf of the DOCS' Commissioner, reviewed and affirmed Plaintiff's March 21, 2006 Tier III hearing.

### Right to a Temporary Release Revocation Hearing

57. In 1978, the law was established in New York that a prison inmate in a temporary release program must receive a due process hearing prior to revocation of his or her release status, Tracy v. Salamack, 572 F.2d 393 (2d Cir. 1978), a holding reaffirmed in 2003, Anderson v. Recore, et al., 317 F3d 194 (2d Cir. 2003).

58. On May 4, 2006, the Second Circuit held that correctional officials violated a prisoner's due process rights by not giving him notice and an opportunity to be heard before revoking his participation in a temporary release program, notwithstanding that the disciplinary charges regarding his violation of the temporary release rules had been sustained at a disciplinary hearing in which he participated. Anderson v. Recore, et al., 446 F.3d 324 (2d Cir. 2006).

59. On information and belief, Defendants Fischer, Selsky, Joy and Bonacci had notice of the 2006 Second Circuit opinion in <u>Anderson</u> at the time they decided Plaintiff's administrative appeals or were in a position to order that Plaintiff be immediately restored to the temporary release program and failed to take corrective action.

### Temporary Release Administrative Appeals

60. Plaintiff filed a timely appeal of her temporary release revocation to Defendant Deborah Joy, the DOCS' Director of Temporary Release.

61. By a decision dated May 18, 2006, Defendant J. Bonacci, acting on behalf of Defendant Joy, reviewed and denied Plaintiff's work release removal appeal.

62. On information and belief, Defendant Joy reviewed and affirmed the denial of Plaintiff's appeal.

### Article 78 Proceeding

63. Plaintiff timely filed an Article 78 Proceeding in New York State Supreme Court, Orleans County challenging the dispositions at her Tier III hearings and her removal from temporary release. The Article 78 Proceeding was transferred to the Appellate Division, Fourth Department because it raised the issue of the sufficiency of the evidence at the hearing.

64. Plaintiff named as Respondents in that action, Defendants Selsky, Joy, Powers, McNamara, and Scalise.

65. In May 2007, fourteen months after Plaintiff was taken from her community and locked up in SHU, Defendants conceded that they did not have evidence and a reason to revoke her temporary release and hold her in SHU and in prison.

66. By a letter dated May 22, 2007, Respondents, through their attorney, the Attorney General of the State of New York, Martin Hotvet, Assistant Solicitor General, notified the

9

Appellate Division, Fourth Department that the Tier III hearings being challenged were administratively reversed and that Plaintiff had been reinstated into the work release program.

67. Despite Assistant Solicitor General Hotvet's statement to the Court, Plaintiff was never reinstated on work release and remained incarcerated for another three months until she was released on parole.

### Failure to Grant Presumptive Parole Release

68. But for the Tier III hearings referred to above, Plaintiff would have been eligible for and would have been released on parole in November 2006 under the presumptive supplemental merit time program operated by the Commissioner of DOCS.

69. In May 2007, when Plaintiff was informed that Defendants had reversed the Tier III hearings, she requested immediate release under the presumptive supplemental merit time program. She was informed that she had a new merit time parole date of August 10, 2007.

70. Plaintiff filed a grievance requesting immediate release with the Albion Inmate Grievance Resolution Committee at Albion. The grievance was never heard or decided.

71. On June 26, 2007, Plaintiff wrote a letter to Defendant Deborah Joy demanding that she be immediately released under the presumptive supplemental merit time program and because of her possible release in August 2007 she would not be able to participate in work release. Plaintiff received a response that her request was not a temporary release issue.

72. On July 1, 2007, Plaintiff wrote a letter to Defendant Brian Fischer demanding her immediate release under the presumptive supplemental merit time program but she never received a response.

73. On information and belief, Defendant Fischer received the letter and did not take appropriate steps to immediately release Plaintiff under the presumptive supplemental merit time program.

74. Plaintiff was finally released on parole under the merit time program on August 10, 2007.

## CLAIMS FOR RELIEF

75. Defendants' actions and omissions stated above caused Plaintiff pain, physical injury, emotional distress, lost wages and 17 months of illegal confinement.

76. Defendants' actions and omissions stated above violated Plaintiff's rights to due process of law guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983.

## JURY TRIAL DEMAND

77. Plaintiff demands a trial by jury.

## RELIEF REQUESTED

78. Adjudge and declare that Defendants' actions and omissions as stated above violated Plaintiff's rights guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983.

79. Award Plaintiff compensatory and punitive damages, in an amount to be determined, against the Defendants for the violation of Plaintiff's constitutional right to due process of law, for pain, suffering, physical injuries, emotional distress and the loss of wages caused by the Defendants' actions and omissions.

80. Award Plaintiff the costs of this litigation and reasonable attorney's fees and expenses pursuant to 42 U.S.C. § 1983 and § 1988.

81. Award such other and further relief as the Court deems just and proper.

Dated: April 8 , 2008

    s/  Tom Terrizzi
TOM TERRIZZI
Law Office of Tom Terrizzi
209 Hudson Street
Ithaca, NY 14850

1272 Delaware Ave.
Buffalo, NY 14209

607-319-4197
tterrizzi05@yahoo.com